IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHAD ZIEBART,

Plaintiff,

v. Case No. 25-01255-JWB

MENARD, INC.,

Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion for summary judgment. (Doc. 36.) The motion is fully briefed and ripe for decision. (Docs. 37–39.) For the reasons stated herein, Defendant's motion for summary judgment is DENIED.

## I. Facts and Procedural History

This case involves a slip-and-fall dispute between Plaintiff Chad Ziebart and Defendant Menard, Inc. ("Menard"). In keeping with the standards governing summary judgment, the following statement of facts views the evidence, and all reasonable inferences, in the light most favorable to Mr. Ziebart, the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (evidence is viewed in the light most favorable to the non-moving party because credibility determinations, weighing conflicting evidence, and drawing appropriate inferences are jury rather than judge functions).

Between January 8–9, 2024, central and western Kansas experienced a major snowstorm with approximately eight to twelve inches of snowfall. (Doc. 38 at 2.) On the evening of January 11, 2024, Mr. Ziebart went with his wife and children to Defendant's store at 1110 Lareu Road in Garden City, Kansas, to purchase a couch. (*Id.* at 3.) Mr. Ziebart drove a 2008 Dodge Mega Cab

pickup truck to the store on that date. (*Id.* at 4.) When the Ziebart family arrived at the store, the weather was below freezing and windy with trace amounts of snowfall. (*Id.*) There were very few customers at the store that day due to the weather conditions. (*Id.*)

After purchasing the couch inside the store, Mr. Ziebart and his family drove around to the pickup and delivery area located outside at the back of the store to retrieve the couch. (*Id.* at 5.) Before loading the couch, Mrs. Ziebart noticed a store employee, Andrew Shelton, at the pickup and delivery help desk area nearby who could see them as they loaded their couch into the vehicle. (*Id.* at 6.) Mrs. Ziebart also observed a pile of previously cleared snow in the store's lumber area. (*Id.* at 10.)

Mr. Shelton saw Mr. Ziebart slip on a patch of ice at the passenger-side rear tire of his truck. (*Id.* at 9.) Minutes later, Mr. Ziebart slipped again and fell near the back side of the truck as he was retrieving a strap to finish strapping down the couch. (*Id.* at 8–9.) Nobody observed Mr. Ziebart fall. (*Id.*)

The parties disagree over several issues of fact. First, whether the Garden City store observed Menard's salting policy on the date in question. According to Menard, the company requires that its employees regularly walk around and salt any snowy or icy areas outside as needed. (Doc. 37 at 2.) And Mr. Shelton asserts that he salted the pickup and delivery area "several times" on January 11 due to snow. (*Id.*) Mr. Ziebart concedes that Menard has an informal practice of salting any snowy or icy areas outside as needed and that Mr. Shelton *said* he salted the pickup and delivery area. (Doc. 38 at 5.) But Mr. Ziebart opposes any implication that the area where he fell was properly treated at the relevant time. (*Id.*) He also maintains that there is no written policy or checklist for periodic inspection of the parking lot or loading areas at the store and no log or

record of when or where salt is applied. (*Id.*) Menard does not challenge that description of its salting policy; it simply asserts that the fact it has a policy should be admitted. (*See* Doc. 39 at 4.)

Next, the parties disagree about whether Menard hired a third-party contractor to remove ice and snow from its Garden City store. Menard asserts that it did. (Doc. 37 at 3.) Menard also asserts that, according to records, its third-party contractor removed ice and snow from the Garden City store on January 8–11. (*Id.*) Mr. Ziebart disagrees with both allegations, asserting that Mr. Shelton testified that no third-party ice and snow removal service was used. (Doc. 38 at 6.)

Finally, the parties disagree about the nature of Mr. Shelton's interaction with Mr. Ziebart when he first slipped. In Mr. Ziebart's account, Mr. Shelton told him, "I am going to go get some salt." (Shelton Depo., Doc. 39-6 at 14:20.) Mr. Ziebart asserts that he responded, "I'm almost done." (*Id*. at 14:21) He also asserts that Mr. Shelton did not apply salt to the icy area before Mr. Ziebart fell. (Doc. 38 at 6.) But, according to Menard, Mr. Shelton warned Mr. Ziebart to be careful with the ongoing snowfall and supposedly went to retrieve salt but was stopped by Mr. Ziebart, who said, "it's all right, I'm almost done." (Shelton Depo., Doc. 39-6 at 14:21.)

Mr. Ziebart filed this action on November 11, 2025, asserting a single claim of negligence against Menard. (Doc. 1.) Menard timely filed a motion for summary judgment arguing (1) that it had no duty to remove ice and snow from its outdoor surfaces during a storm and a reasonable time thereafter; and (2) that Mr. Ziebart assumed the risk of his fall when he chose to patronize the Garden City store during inclement weather. (Doc. 37 at 5–7.)

## II. Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are

"genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1219 (10th Cir. 2006). The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

**III. Analysis**

Mr. Ziebart alleges negligence and seeks damages against Menard. (Doc. 35 at 3–4.) To establish negligence under Kansas law, Mr. Ziebart must prove the "existence of a duty, a breach of that duty, an injury, and proximate cause, that is, a causal connection between the duty breached and the injury suffered." *D.W. v. Bliss*, 279 Kan. 726, 734, 112 P.3d 232, 238 (2005).

In moving for summary judgment, Menard makes two arguments: (1) it had no duty to remove ice and snow from its outdoor surfaces during the winter storm and within a reasonable time thereafter (the "winter storm doctrine"); and (2) Mr. Ziebart assumed the risk of his fall. Under the winter storm doctrine, "a business proprietor, absent unusual circumstances, does not breach the duty of ordinary care by not removing snow or ice from outdoor surfaces during a storm and a reasonable time thereafter." *Agnew v. Dillons, Inc.*, 16 Kan. App. 2d 298, 304 (1991). The court will address assumption of risk in more detail shortly.

Menard argues that it had no duty to remove ice or snow from the pickup and delivery area on the date of the incident as Garden City had experienced a major winter storm less than three days before and Mr. Ziebart should have known that the surfaces in the pickup and delivery area would likely still be affected by this storm. (Doc. 37 at 5–6.) Menard also argues that snow and precipitation continued to accumulate on the date of the incident, which increased the likelihood that the outdoor surfaces at the Garden City store would be slippery or partially covered with snow. (*Id.* at 6.) It maintains that, although its "employees and contractors cleared and salted outdoor

surfaces diligently between January 8–11, Kansas law does not require [Menard] to be an 'absolute insurer of the safety of [its] customers.'" (*Id.* (quoting *Lacost v. Boot Hill Casino & Resort*, No. 123,873, 2021 WL 5409684, at *3 (Kan. Ct. App. Nov. 19, 2021) (first alteration in original)).)

For his part, Mr. Ziebart argues that a proprietor's voluntary undertaking to treat a hazard—and disputed evidence as to whether that undertaking was carried out with ordinary care—defeats summary judgment. (Doc. 38 at 13.) *See Worley v. Broadford Pointe Apartments, Inc.*, 31 Kan. App. 2d 737, 744 (2003) (finding the case "much different than *Agnew*" because the defendant "had voluntarily assumed a responsibility for clearing ice and snow even while a storm was in progress"). He alleges that Mr. Shelton watched Mr. Ziebart slip on a specific patch of ice, told Mr. Ziebart he was going to get salt for that exact location, and never did so before Mr. Ziebart fell again in the same spot minutes later. (Doc. 38 at 1.) Mr. Ziebart therefore insists that a jury could find Mr. Shelton's "actual, particularized knowledge of the exact hazard that caused Mr. Ziebart's injury, coupled with an undertaking to fix it that was never carried out," to be an unusual circumstance. (*Id.* at 14.) To boot, Mr. Ziebart characterizes the time between the winter storm and the incident as "a full three days" and the snowfall on the day of the incident as "trace amounts." (Doc. 38 at 12.)

In reply, Menard challenges Mr. Ziebart's characterization of the efforts to salt the area where Mr. Ziebart slipped. Menard asserts that, although Mr. Shelton offered to salt the area where Mr. Ziebart first slipped, Mr. Ziebart refused to stop loading merchandise into his vehicle in order to allow Mr. Shelton to salt the area. (Doc. 39 at 13.) Menard also asserts that Mr. Ziebart has provided no evidence to show that Mr. Shelton had sufficient time to obtain salt and begin salting the area before the fall occurred. (*Id.*) Menard therefore contends that there were no unusual circumstances to overcome the winter storm doctrine. (*Id.*)

The parties' disagreements reveal several genuine issues of material fact. Those include how much time passed between the storm on January 8–9 and the incident on January 11, whether a third party cleared the ice and snow at the Garden City location between January 8–11, to what degree the Garden City location followed a salting policy on January 11, and what precisely Mr. Shelton said and did after Mr. Ziebart first slipped.

There are also several downstream issues of fact, including whether reasonable time had passed between the snowstorm and the incident in question, whether the snowfall on January 11 reset the clock for the winter storm doctrine, and whether Mr. Shelton had sufficient time to obtain salt and apply it to the area where Mr. Ziebart fell. All these issues are best left to a jury. *See Travelers Indem. Co. v. P1 Grp., Inc.*, No. 18-01287-EFM, 2020 WL 1062085, at *5 (D. Kan. Mar. 5, 2020) ("Normally, the presence or absence of negligence is a question of fact reserved for the jury."); *see also Gouldner v. Monarch Invs. & Mgmt. Grp., LLC*, No. 22-cv-01107-TC, 2023 WL 8529398, at *4 (D. Kan. Dec. 8, 2023) (holding that a jury must determine whether the delay between the end of a snowfall and the time the defendant began clearing now from its property was reasonable).

As mentioned, Menard also seeks summary judgment based on assumption of risk. (Doc. 37 at 6–7.) Because the pretrial order contains no assumption-of-risk defense, that defense is not preserved in the case and thus is waived. *Zenith Petroleum Corp. v. Steerman*, 656 F. App'x 885, 887 (10th Cir. 2016) ("[A] district court has authority to sua sponte confine the litigation to the claims and issues identified in the pretrial order."). Even if that issue were properly before the court, Kansas no longer recognizes an assumption-of-risk defense. *Simmons v. Porter*, 298 Kan. 299, 313 (2013) ("[P]reserving assumption of risk as a complete bar to recovery is no longer sound and should be of no practical effect given the statutory scheme of comparative fault.") What

Kansas *does* recognize, and what Menard *did* preserve, is a comparative-fault defense. (Doc. 35 at 4.) *See* K.S.A. § 60-258a. That issue is best left to a jury. *See Miller v. CNH Indus. Am. LLC*, 645 F. Supp. 3d 1184, 1202 (D. Kan. 2022) (holding that under Kansas law, comparative fault is normally a question of fact for the jury).

The court will therefore deny Menard's motion for summary judgment.

## IV. Conclusion

For the foregoing reasons, Menard's motion for summary judgment (Doc. 36) is DENIED.

IT IS SO ORDERED. Dated this 19th] day of October, 2026.

s/ John W. Broomes
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE